**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| VLADIMIR VLADIMIROVICH BRIK, | ) CASE NO. 4:20-CV-01825-CEF |
| | ) |
| Plaintiff, | ) JUDGE CHARLES ESQUE FLEMING |
| | ) |
| v. | ) |
| | ) |
| | ) MAGISTRATE JUDGE |
| C. MCDONNELL, NURSE; DR. JOHN | ) CARMEN E. HENDERSON |
| DUNLOP, JAMES NESSLE, | ) |
| | ) **REPORT & RECOMMENDATION** |
| Defendants, | ) |

This matter is before the Court upon referral for general pretrial supervision. (ECF No. 13). Pursuant to 28 U.S.C. § 636(b)(1)(B), this Court may issue a report and recommendation on dispositive motions such as the pending motion to dismiss filed by Defendants (ECF No. 30). *See also* Fed. R. Civ. P. 72(b) (requiring a Magistrate Judge to enter proposed findings, recommendations or a report on referred dispositive motions). The matter is fully briefed (ECF Nos. 30, 34, and 37) and ripe for review. For the foregoing reasons, this Court recommends that Defendants' motion to dismiss be granted and Plaintiff's Complaint be DISMISSED in its entirety.

I. Background

The background of this matter was set forth by the Sixth Circuit in its February 7, 2022, mandate:

> Brik is an inmate a FCI Elkton. In August 2020, he filed a complaint in the district court under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), claiming that prison employees and officers were deliberately indifferent to his serious medical needs. Specifically, Brik claimed that on June 23, 2018, he awoke from a nap around 7:30 p.m. feeling extremely fatigued and experiencing "chest pains from an irregular high and hard heart rate and an obstructive-like pain in my abdomen." He left

his cell and staggered into the compound to find a corrections officer for assistance. Exhausted by this effort, Brik lay down on the grass and summoned staff members, including defendant Officer Nestle, over to him. When the group arrived, someone asked Brik if he was high on drugs. Brik said "no" and told them that he thought that something was wrong with his heart. At that point, Brik was loaded into a cart and transported to the medical department.

At the infirmary, Brik informed defendant Nurse C. McConnell and other medical staff who were present that he had been taking Milk of Magnesia several times a week as instructed by the medical department and that now "something was seriously wrong with my heart and abdomen." Brik's "vitals were administered," but once McConnell read Brik's medical file, his "demeanor changed," and he said to Brik, "[Y]ou're always coming in here for different symptoms, nothing is wrong with you, go back to your Unit." Brik reiterated that he thought that something was wrong with his heart, but McConnell told him it was just anxiety and that he should relax. McConnell sent Brik back to his cell without any further examination or tests.

Brik's symptoms continued to worsen—they now included bouts of vomiting—but corrections officers, including Nestle, initially failed or refused to help him because he had been "medically cleared" or, still believing that Brik was high, they disregarded his complaints. Staff eventually recognized that Brik was seriously ill and arranged for him to be transported to a hospital. Brik was placed in the intensive care unit, where he was diagnosed with hyponatremia (abnormally low blood sodium), altered mental status, and seizures. The next morning at the hospital, a nurse told Brik that his sodium and potassium levels were dangerously low and that he nearly went into cardiac arrest. Brik was given follow-up care instructions, but defendant Dr. Dunlap (a prison doctor) never implemented them.

Brik alleged in his Bivens complaint that McConnell and Nestle, as well other unidentified medical staff and corrections officers, were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. Further, he alleged that the officers and medical staff conspired to injure him. Brik also claimed that the Bureau of Prisons and the Warden and the Assistant Warden of his prison failed to train their respective staffs; similarly, he claimed that the Warden, the Assistant Warden, and the Medical Supervisor failed to supervise their respective staffs. In addition, Brik claimed that the officers and medical staff maintained a culture in which inmates' medical needs were ignored or discounted as consequences of illegal drug use. Finally, Brik asserted state-law claims against all

2

> of the defendants for negligent supervision and intentional infliction of emotional distress; and against Dr. Dunlap for intentionally delaying or refusing to implement his post-discharge treatment plan. Brik asked for $50,000,000 in compensatory damages, as well as attorney's fees and costs.
>
> After filing his complaint, Brik moved the district court to proceed in forma pauperis. The district court granted that motion and then screened Brik's complaint pursuant to § 1915(e)(2)(B) to determine whether any part of it should be dismissed for failure to state a claim upon which relief may be granted. The district court concluded that Brik failed to state a deliberate-indifference claim against Nestle and McConnell because Nestle transported him to the infirmary and McConnell assessed his condition. Thus, according to the district court, Brik had pleaded nothing more than a negligence or malpractice claim against these defendants, which was insufficient to establish an Eighth Amendment violation. The court found that Brik's claim that Dr. Dunlap failed to implement the hospital's follow-up instructions did not lead to an inference that he knew that Brik was at a substantial risk of serious harm. The district court concluded that Brik had alleged only respondeat superior liability against the Warden, Assistant Warden, and Medical Supervisor. Finally, the court held that the BOP was not an entity that was capable of being sued. The district court therefore dismissed Brik's federal claims with prejudice. The court declined to exercise supplemental jurisdiction over Brik's state-law claims and dismissed those claims without prejudice.

(ECF No. 10 at 1-3). The Sixth Circuit reversed the district court's dismissal of Brik's deliberate-indifference claim against Nessle, affirmed the dismissal of all other federal claims, and reinstated the state-law claims as they had been dismissed only because the district court had declined to exercise supplemental jurisdiction over them after dismissing all federal claims. (ECF No. 10 at 5-6).

On January 9, 2023, Defendants moved to dismiss Brik's Complaint for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Defendants allege that Brik failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). Additionally, Defendants move to dismiss Brik's remaining state law claims as he has

3

not filed a tort claim as to his state law claims for injury, as is required by the 28 U.S.C. § 2675(a). (ECF No. 30). Brik asks the Court to excuse his failure to exhaust his remedies as he was prevented from doing so as he was met with "intimidation, machination, and retaliation" as a result of him engaging in the grievance process. (ECF No. 34 at 1). Specifically, Brik states that when he requested a grievance form from his counselor, his counselor refused the request "unless Brik attempted to 'resolve any issues with medical personally'." (ECF No. 34 at 1). Brik alleges that he obtained the grievance form from another inmate and when he showed it to his counselor, the counselor stated angrily " ' where did you get this form'". (ECF No. 34 at 1). According to Brik, the counselor then "became condescending and intimidating while questioning what Brik thought he was doing and that Brik cannot file lawsuits for money through Administrative Remedies and how they were designed for institutional complaints only." (ECF No. 34 at 2). Brik submitted the initial grievance form and then waited for six weeks without a response before submitting a new grievance form. (ECF No. 34 at 2). Brik does not address the motion to dismiss his state law claims. (*See* ECF No. 34). Defendants reply that Brik's failure to timely pursue his available remedies occurred prior to his allegations of intimidation and harassment. (ECF No. 37 at 1). Additionally, Defendants restate that presentment of an administrative tort claim is a mandatory requirement under Federal Tort Claims Act, 28 U.S.C. § 2675(a), and Brik's failure to comply with the requirement requires dismissal of the state law claims.

II. Standard of Review

When deciding a motion to dismiss under Federal Civil Rule 12(b) (6), the Court must accept the complaint's allegations as true, *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), and view the complaint in a light most favorable to the plaintiff. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). Although a complaint

4

need not contain "detailed factual allegations," Rule 12(b)(6) requires more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

 III. Failure to Pursue Administrative Remedies

  A. Law

Under the PLRA "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12(2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 2387,165 L.Ed.2d 368 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id*., 548 U.S. at 90, 126 S.Ct. at 2385. Thus, whether a claim is "properly exhausted" under the PLRA requires an examination of the particular institution's administrative rules and regulations regarding prisoner

grievances. Exhaustion is required even if the inmate subjectively believes that the remedy is not available or that the procedure is "ineffectual or futile." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011). A federal prisoner's failure to exhaust may be excused if administrative remedies are not reasonably available, but the prisoner must show he made "some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Napier*, 636 F.3d at 223.

    B. Analysis

The BOP's Administrative Remedy Program, set forth in 28 C.F.R. §§ 542.10, et seq., allows federal prisoners to seek formal review of an issue relating to their confinement. *Id*. at § 542.10(a). An inmate shall first attempt informal resolution with staff. 28 C.F.R. § 542.13. If an inmate is unable to resolve the complaint informally, he may file a formal written complaint on the proper form, a BP-9, within twenty calendar days of the date of the occurrence on which the complaint is based. 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to the formal complaint, he may appeal, using the appropriate BP-10 form, to the Regional Director within twenty calendar days of the Warden's response. 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal to the Office of the General Counsel using the form BP-11 within thirty days of the date the Regional Director's response. *Id*. The Warden must respond to a Request within twenty days; the Regional Director must respond to an Appeal within thirty days; and the General Counsel must respond to an Appeal within forty days. *Id*. at § 542.18. If the prisoner does not receive a response within the time allotted, the prisoner may consider the absence of a response to be a denial at that level. *Id*. Upon completion of this process, the prisoner has exhausted his administrative remedies. 28 C.F.R. § 542.15(a).

The medical incident at issue in Brik's Complaint occurred on June 23, 2018. (ECF No. 1-2, Page ID # 8, para. IV). Officer Nessle's alleged deliberate indifference to Brik's medical needs occurred on June 23, 2018. *Id.* The BOP procedures required that Brik file a formal written complaint (on a form BP-9) no later than twenty calendar days of the incident on which the complaint is based. 28 C.F.R. § 542.14(a); *see* 28 C.F.R. § 542.13 (informal resolution attempts, on a form BP-8, required before filing a formal complaint) (emphasis added). Thus, Brik needed to initiate the administrative remedy process no later than July 13, 2018.

Brik argues that he first submitted a BP-8 on May 4, 2020, and after six weeks passed without a response, Brik submitted a "sensitive BP-10" directly to the regional director believing that the submitting the BP-9 would be futile. (ECF No. 34 at 1-2). Brik alleges that he did not receive the response to his BP-10. (ECF No. 34 at 2).

It is undisputed that Brik did not even attempt to pursue the administrative remedy process until 2020. (*See* ECF No. 34 at 1). Even assuming Brik's assertions are true, he initiated the grievance process through the prison's informal complaint process by submitting the BP-8 on May 4, 2020, nearly two years after the deadline. Brik failed to file a BP-9 and instead proceeded directly to the BP-10. Exhaustion is required even if the inmate subjectively believes that the remedy is not available or that the procedure is "ineffectual or futile." *Napier*, 636 F.3d at 222. Finally, Brik's argument that he made reasonable attempts to exhaust his administrative remedies must fail as he has not demonstrated any attempts to comply within the time allowed. Brik's complaints regarding his counselor's "intimidation" occurred, at best, six weeks before May 4, 2020, when he asserts that he submitted his initial BP-8. Accordingly, Brik has not provided any evidence or even argument that he attempted to pursue the grievance process within the twenty days following the incident.

Accordingly, this Court recommends that Brik's deliberate-indifference claim be dismissed without prejudice for failing to exhaust his administrative remedies. *See Boyd v. Corrections Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2006) (citing *Knuckles El v. Toombs*, 215 F.3d 640 (6th Cir.2000) (Under the PLRA, a dismissal for failure to exhaust nonjudicial remedies is without prejudice.).

IV. State Law Claims

Brik's remaining state law claims include negligent supervision, intentional infliction of emotional distress, and intentional delay or refusal to implement his post-discharge treatment plan. (*See* ECF No. 10 at 3; ECF No. 1-2 at 3). Once a plaintiff's federal claims have been dismissed, the issue becomes whether the Court, in its discretion, will exercise supplemental jurisdiction over the remaining state law claims. "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). "Residual jurisdiction should be exercised only in cases where the 'interest of judicial economy and the avoidance of multiplicity of litigation' outweigh our concern over 'needlessly deciding state law issues.'" *Id*. (quoting *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991)). Thus, in the "ordinary case," the exercise of supplemental jurisdiction is improper after all federal claims have been dismissed. See *Moon*, 465 F.3d at 728.

Nothing about this matter indicates that it is anything but an "ordinary case." Accordingly, having recommended dismissal of Brik's sole remaining federal claim, this Court recommends that the District Court decline to exercise supplemental jurisdiction over Brik's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction.").

V. Conclusion

This Court recommends the dismissal of the Brik's remaining claims. As explained above, Brik's deliberate-indifference claims should be dismissed for failing to exhaust his administrative remedies. Additionally, the court should decline to exercise pendent jurisdiction over Brik's state law claims.

Dated: April 24, 2023

 *s/Carmen E. Henderson*
 Carmen E. Henderson
 United States Magistrate Judge

---

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).